[No. 29897. Department Two. January 22, 1948.]

MARY E. LEAR, *Appellant,* v. CECIL E. LEAR, *Respondent.*[1]

[1]Reported in 189 P. (2d) 237.

*Mifflin & Mifflin,* for appellant.

*Rummens & Griffin* and *Kenneth P. Short,* for respondent.

BEALS, J.—Prior to November, 1940, Mary E. Lear filed, in the superior court for King county, an action for divorce against her husband, Cecil E. Lear, asking in her complaint, *inter alia,* for the custody of Robert Lear, the minor son of the parties, together with suitable provision for the child's support.

The defendant made no appearance in the action, but a written, signed stipulation and property settlement, which the parties had executed, was introduced in evidence. This agreement, which is referred to in the findings of fact, was incorporated in the interlocutory order, and provides that, subject to the approval of the court and if an interlocutory order should be entered in plaintiff's favor, the order should

" . . . provide for the care, custody and control of the minor child of the parties hereto to be vested exclusively in the plaintiff, who is recognized as a fit and proper person to be awarded such care, custody and control, subject to the right of the defendant to have reasonable visitation of said child and his companionship at reasonable times; and for the support, maintenance and education of said child the defendant shall pay to plaintiff monthly the sum of Fifty ($50.00) Dollars per month, payable in two installments of Twenty-five ($25.00) Dollars each on the 1st and 15th days of each month, commencing forthwith."

The interlocutory order, which was entered November 15, 1940, awarded the "permanent care, custody and control" of the minor child, then nine years of age, to the plain-

tiff, "subject to the right of visitation by defendant at all reasonable times." The interlocutory order also provided (in accord with the agreement above referred to) that the defendant pay to the plaintiff for the support of the child fifty dollars per month.

A decree of divorce, approving and confirming the interlocutory order, divorcing the parties, awarding the custody of the child to the plaintiff, with the same provision preserving to the defendant the right of visitation, and requiring the defendant to pay fifty dollars a month for the child's support, was entered August 7, 1941. Neither the interlocutory order nor the decree of divorce contained any language prohibiting the plaintiff from removing the child from the state of Washington.

March 22, 1943, it appearing that the defendant, Cecil E. Lear, had remarried, an order was entered, by consent of both parties, after a hearing, modifying the decree of divorce by reducing the monthly payments to be made by the defendant for his child's support to the sum of forty dollars a month, no other provision of the final decree being changed in any respect.

The plaintiff, Mary E. Lear, July 27, 1944, filed a motion for an order directing the defendant to appear and show cause why he should not be adjudged in contempt of court for his willful failure to comply with the provision of the decree, as modified, directing that he make the payments, above referred to, for the support of the child, plaintiff alleging that the defendant had failed to make any payment for the support of the child on or after May 1, 1944.

In response to the order to show cause, the defendant appeared, filing his petition to modify the decree of divorce, alleging that, during the fall of 1943, the plaintiff had remarried, and, in May, 1944, with her husband and the child, had moved to Alaska, where she had since resided, thereby depriving the defendant of all opportunity of visiting his child. The defendant alleged that, for the reason stated, he had made no payments for the child's support, and asked that, in view of changed conditions, the decree of divorce

be again modified by reducing the payments which he should be required to make for the support of his child to twenty dollars a month, and that no payments be required to be made as long as the defendant was deprived of the right of visitation.

The plaintiff filed a reply to this petition, alleging that it was necessary for her to move to Alaska, with the child, because of her husband's employment there.

The issues having been completed, and evidence having been taken, including that of Mary E. Lear, who testified by deposition, the matter came on regularly to be heard, and the trial court, October 27, 1945, entered an order finding that the defendant had made all payments due, pursuant to the decree as modified, up to May, 1944, and that, at all times subsequent to the last payment, the plaintiff had been residing, with the minor child of the parties, without the state of Washington. The order further relieved the defendant from the payment of money for the support of the child during the absence of the child from the state of Washington, and directed that payments be resumed upon the return of the child to this state. The order concluded by dismissing the proceeding whereby the plaintiff sought an order adjudging the defendant to be in contempt.

After the denial of plaintiff's motion for judgment notwithstanding the court's order or, in the alternative, for a new trial, the plaintiff appealed to this court from the order entered and from the denial of her motion.

Appellant assigns error (1) upon the entry of the order granting respondent's petition, making the same retroactive, and dismissing the contempt proceeding instituted by appellant; (2) upon the entry of the order denying appellant's motion for a new trial; (3) upon the refusal of the trial court to require respondent to pay the accrued installments which, by the decree, he was ordered to pay for the support of his minor son, and (4) upon the order of the court relieving respondent from the payment of past accrued installments and future support money for his minor son during the absence of the child from the state of Washington.

It appears, from the evidence, that appellant and her present husband, Lester B. Sorum, intermarried October 21, 1943, appellant testifying that she, with her husband and the child of the parties to this proceeding, removed from Seattle to Kodiak, Alaska, May 9, 1944, because of the employment of her husband at the naval air base at Kodiak; that it was not her husband's intention to reside permanently at Kodiak, his employment there being temporary in its nature. The witness testified to other matters which need not be discussed.

Respondent, testifying in his own behalf, stated that he remarried January 1, 1942, and that a child had been born three years later. He further stated that he had refused to make payments for the support of his child by the appellant because, by the child's removal from the state of Washington, he had been denied the right of companionship with his child.

Respondent argues that the only matter involved in this appeal is the refusal of the trial court to adjudge respondent to be in contempt of court for failure to make the payments for the support of his child, which, under the decree of divorce and subsequent order, he was obligated to make and which it is admitted he did not make after May 1, 1944.

The proceeding instituted by appellant was a civil contempt, invoking the equitable jurisdiction of the court and asking the exercise of the court's discretion in the matter. *Surry v. Surry,* 78 Wash. 370, 139 Pac. 44; *State ex rel. Hunter v. Ronald,* 106 Wash. 413, 180 Pac. 125; *Phillips v. Phillips,* 165 Wash. 616, 6 P. (2d) 61.

While the application for an order adjudging a party to the proceeding to be in contempt is, in so far as the entry of an order of contempt is concerned, asking for the exercise of the court's discretion, in this proceeding there is involved more than the question of whether or not respondent should be adjudged to stand in contempt of court and subjected to punishment if he fails to purge himself of such contempt. *Feek v. Feek,* 187 Wash. 573, 60 P. (2d) 686.

The superior court may, after a hearing, enter such an

order as the court, in the exercise of its discretion, deems appropriate. *Phillips v. Phillips, supra.*

The order appealed from relieves respondent "from the payment of support money during the absence of said child from the State of Washington," and provides that respondent shall make payments for the support of the child from the date of the child's return to this state.

Respondent's contention that "whether or not the sums accrued are collectible in a proceeding other than in contempt is open if, as, and when respondent [appellant] institutes such action," appears unsound, in view of the above-quoted provision of the order appealed from, which might well be pleaded by respondent as *res judicata* in any other form of action which appellant might institute.

In any event, appellant was justified in appealing from the order and in considering the order as meaning exactly what it says.

In all matters concerning the minor children of divorced persons, the welfare of the child in question is the matter of first importance.

In the case of *Bedolfe v. Bedolfe*, 71 Wash. 60, 127 Pac. 594, in which it appeared that the custody of a minor daughter had been awarded to the defendant husband, subject to the right of the plaintiff wife to visit the child at all reasonable times, the decree of divorce contained no prohibition against the removal of the child from the state, and the father placed the child with his parents, who resided in Oregon at a place very difficult of access. The divorced wife asked the trial court that the decree be modified by adding a provision to the effect that the husband should maintain the child within this state. Her application having been denied, the wife appealed to this court. In the course of the opinion, appears the following:

"The privilege of visitation of the parent is an important one, but it is not an absolute right, nor is it the paramount consideration; it must yield to the good of the child, which is in the last analysis the controlling consideration."

The order appealed from was affirmed.

In *Kirby v. Kirby*, 126 Wash. 530, 219 Pac. 27, it appeared that a decree of divorce had been entered awarding the mother the custody of the minor child of the parties during each school year, and providing that the father should have the child with him at certain other stated periods. The decree further provided that the mother should not remove the child from the jurisdiction of the court without the consent of the father or by leave of court first granted. The mother, having remarried, petitioned the court for modification of the decree, allowing her and her then husband to take the child to the state of New York, where they desired to live. On appeal from an order of the trial court denying the mother's petition for modification of the decree, the order was reversed, with instructions to enter an order pursuant to definite instructions contained in the opinion, one provision being that the child might be taken to the state of New York.

In the case of *Goade v. Goade*, 20 Wn. (2d) 19, 145 P. (2d) 886, this court reviewed an order modifying an interlocutory order, which had ripened into a final decree of divorce, the order prohibiting the mother, who had been awarded the custody of the child, from removing the child from this state. The order appealed from permitted the mother to remove the child from this state. We affirmed the order.

In the case at bar, neither the interlocutory order nor the decree of divorce contained any prohibition against the removal by appellant of her son from the state of Washington. Respondent, of course, contends, and the trial court held, that the removal of the child by appellant from this state suspended respondent's obligation to make the payments to appellant for the child's support that he was required to make by the decree of divorce, as modified by the order referred to above.

In all such questions as that here presented, the primary consideration is the welfare of the child. The right of seeing and enjoying the company of his child, which was conferred upon respondent by the interlocutory order and the decree of divorce, is, of course, a valuable right, of

which respondent should not be deprived save for good and sufficient reasons. However, respondent's obligation to contribute toward the support of his child is of greater and more basic importance.

As stated by respondent, the taking of a child by a parent from a state where both parents resided may, of itself, amount to little, as the child may, in its new home, still be near the other parent; while the removal of a child from one corner of a state to another may effectively limit the right of visitation which a decree of divorce may confer upon the parent having merely the right of visitation.

It is not contended that, while appellant and her child resided within the state of Washington, respondent was ever denied any privilege of seeing his son which was granted to him by the decree of divorce. Evidence introduced by appellant indicates that respondent did not frequently avail himself of the privilege of seeing his son, but we regard that matter as immaterial. He could see his son when he desired to do so, within the right granted him, and, while the child is in Alaska, respondent, as a practical proposition, is denied that privilege.

In the absence of a direct prohibition against the removal of a child from this state, the fact that, by an interlocutory order or decree of divorce, one party to the action is awarded the custody of a minor child, subject to the right of reasonable visitation by the other parent, does not amount to a prohibition against the changing of residence of the child by the parent to whom the custody was awarded.

No showing was made on behalf of respondent that appellant's removal of the child to Alaska was contrary to the child's best interests, nor did respondent request that the court enter any order concerning the child's place of residence or that the child be permitted to visit respondent during periods of vacation from school. Appellant testified that the child was well, and that he was attending school. The record contains nothing which suggests that the child is not well cared for and advantageously situated.

Questions concerning the right of a divorced wife to

demand from her former husband payments of money awarded to her by a divorce decree for the support of a child, the wife having removed the child from the jurisdiction of the court which granted the divorce, have been considered by the courts of several jurisdictions. In some of these, it appears that the courts have laid down the rule that the welfare of the child is the primary consideration; while the opinions of other courts have not referred to that phase of the situation. This court has held that the welfare of the child is the matter of first importance, and, in effect, that the child itself is the beneficiary under an order directing the payment of money for the child's support.

In 27 C. J. S. 1227, Divorce, § 321 (b), is found the following text:

"Proceedings to enforce an order for the payment of money for the support of minor children are subject to any valid defense against the required payment. Thus it is a good defense that the wife, seeking to enforce the order for support was herself in default; but it has been held that the wife's refusal to permit the husband to exercise the right of visiting the child, accorded by the divorce decree, does not excuse the husband making the required payments, except where the right of visitation is held to be a condition precedent to such payments."

In the case at bar, the payments which appellant is seeking to collect were, by the decree of divorce based upon the interlocutory order, directed to be made by the respondent "for the support, maintenance and education" of the child of the parties to the action. These payments are not alimony, to be paid to appellant, but are for the direct benefit of the child and represent the father's responsibility for the care, support, and education of his child during his son's minority.

Under these circumstances, and upon the record before us, it cannot be held that respondent's obligation to make the payments is contingent upon the continued, convenient exercise of his right of visitation. Of course, respondent has not been deprived of that right, save by the distance which appellant has placed between her child and

respondent. This is not a case where appellant has refused to allow respondent to see the child, which would present an entirely different question, but a case in which appellant, for reasons which appeared to her good and sufficient, has changed her residence and that of the child to a place so far distant from respondent's place of residence that it is apparent that the exercise of respondent's right of visitation is denied him.

The following authorities are of interest in connection with the question above discussed:

In the case of *Commonwealth ex rel. Firestone v. Firestone*, 158 Pa. Super. Ct. 579, 45 A. (2d) 923, there was presented to the court an appeal by a divorced wife from an order relieving the father from the obligation to pay ten dollars a week toward the support of his minor child, who had remained in the custody of the mother. It appeared that the mother had removed to Florida, taking the child with her. The trial court had, at some prior time, relieved the father from making the required payments for the support of the child because of the mother's departure from the state with the child. Thereafter, the mother applied for reinstatement of the order, stating that she intended to remain permanently in Florida. From an order of the trial court denying her petition, she prosecuted the appeal. The order was reversed, with instructions to reinstate the order directing payment of support money for the child. In the course of the opinion, the court referred to the established rule in Pennsylvania that, in such proceedings as that at bar, "the only substantial consideration is the welfare of the child." Continuing, the court said:

"If this mother, by depriving the father of the right of visitation, *were* guilty of contempt of court (which we do not hold), it could subject her, but never the child, to penalties; and it does not relieve the father of the duty to support the child under circumstances such as these."

In the case of *Riesenmey v. Riesenmey*, 236 Mo. App. 551, 155 S. W. (2d) 505, it appeared that a decree of divorce had been granted, on suit of the wife, and the custody of a

minor child awarded to the plaintiff, with provision for payment by the defendant to the plaintiff of monthly installments of money for the support of the child. The decree provided that the defendant should have the right to visit the child at reasonable times. Soon after the entry of the decree, the plaintiff moved to California, taking the child with her. Some years later, the defendant moved to modify the decree, asking for an order terminating the payments for the support of the child. The trial court granted the motion, and the plaintiff in the action appealed. The court called attention to the fact that the decree of divorce did not provide that the child should be kept within the jurisdiction of the court, stating that the court which granted the decree still had jurisdiction over the question of the custody of the child, and that the present welfare of the child was the matter to be considered. The order of the trial court, modifying the decree of divorce, was reversed.

In the case of *Zirkle v. Zirkle*, 202 Ind. 129, 172 N. E. 192, the court held that, while the court which had granted the decree of divorce had continuing jurisdiction with respect to minor children of the parties and might modify its decree, as circumstances required, the fact that the mother removed the child to another state did not justify the father in refusing to make the payments for the support of the child which the court had ordered him to make. The court called attention to the fact that the father had never applied for any modification of the order or made any attempt to have the child returned to the state of Indiana.

The cases of *Feinberg v. Feinberg*, 72 N. J. Eq. 810, 66 Atl. 610, *Hatch v. Hatch*, 15 N. J. Misc. 461, 192 Atl. 241, *Altschuler v. Altschuler*, 246 App. Div. 779, 284 N. Y. Supp. 93, *Leighton v. Leighton*, 48 R. I. 195, 136 Atl. 443, *Campbell v. Campbell*, 37 Wis. 206, *Ex parte Vaughn*, 205 Ala. 296, 87 So. 792, and *Barnes v. Lee*, 128 Ore. 655, 275 Pac. 661, are also in point.

In some jurisdictions, courts have reached conclusions contrary to the cases above cited, but it would seem that, in those states, the courts have considered payments which a

father was ordered to make to his divorced wife for the benefit of his minor child or children as primarily for the benefit of the wife, and have penalized the child for some dereliction on the part of the mother. That rule is often appropriate when questions concerning alimony due the wife have been considered, but this court long since adopted what we are convinced is the better rule, and has held that the welfare of the child concerned is the primary objective to be attained, and that such payments as those with which we are here concerned are for the child, not the mother.

█ In the case at bar, the payments due were ordered made for the support of the minor child of the parties, and the mother violated no provision either of the interlocutory order or the decree of divorce by removing, with her second husband and the child, to the territory of Alaska.

Respondent never requested any modification of the decree, but simply failed and refused to make the payments for the support of the child which the decree directed that he make. In this course of conduct, he, without justification, disobeyed the court's decree.

While the trial court, after having heard evidence concerning the respondent's financial condition, might well have refused to hold him immediately in contempt, the order appealed from is erroneous in so far as it relieved the respondent "from the payment of support money during the absence of said child from the State of Washington," and dismissed the proceeding.

The order appealed from is reversed, with instructions to the trial court to hear further evidence, if the trial court desires to do so, and to grant appellant such relief as may appear just and adequate.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.